# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY L. MITCHELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-08-025-SPS |

## OPINION AND ORDER

The claimant Gary L. Mitchell requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 9, 1955, and was fifty-two years old at the time of the administrative hearing. He has a GED plus some vocational training and previously worked as a glazer, cabinet maker, furniture maker, and construction crew supervisor. The claimant alleges he has been disabled since June 25, 2005, because of pain and discomfort in the back and hypertension.

## Procedural History

On August 3, 2005, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Edward Thompson conducted a hearing and found the claimant was not disabled on August 24, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to perform a full range of

medium work, *i. e.*, that he could lift and/or carry twenty-five pounds frequently and fifty pounds occasionally; stand and/or walk for at least six hours total during an eight-hour workday; and sit for at least six hours total during an eight-hour workday (Tr. 17). The ALJ concluded that the claimant was not disabled because he could perform his past relevant work as a glazer, cabinet maker, furniture maker, and construction crew supervisor (Tr. 19).

**Review**

The claimant's sole contention is that the ALJ failed to properly evaluate his complaints of disabling pain. The Court finds that this contention has merit and that the Commissioner's decision is therefore REVERSED.

The record reveals that the claimant's disorders of the spine and hypertension were severe impairments (Tr. 16). The claimant strained his back at work in June 2005 when he lifted an air compressor (Tr. 128). He underwent an X ray of his lumbar spine in August 2005 after a motor vehicle accident. The X ray showed degenerative changes of the lower lumbar spine, loss of height of the 2nd lumbar vertebra (but is age indeterminate), and mild levoscoliosis (Tr. 117). The claimant was prescribed Lortab for chronic low back pain (Tr. 118-25, 127). A second X ray of the lumbar spine in December 2006 indicated degenerative end plate changes and degenerative disc disease (Tr. 149). In January 2007, the claimant underwent an MRI wherein it was determined that he suffered from diffuse lumbar spondylosis, prominent degenerative end plate changes at L4 and L5, predominately involving the anterior superior end plates, and varying degrees of central canal and neural

foraminal stenosis at each level (Tr. 133-35). The claimant also was treated for hypertension (Tr. 120, 122, 123, 130, 136-48).

In October 2005, consulting physician Dr. Luther Woodcock, M.D., examined the claimant's medical records and concluded that he had the RFC to perform medium work with no other functional limitations (Tr. 104-11). Dr. Bob Dodd, M.D., reviewed Dr. Woodcock's findings and affirmed them in March 2006 (Tr. 132).

At the administrative hearing, the claimant testified he has been suffering from low back pain ever since an air compressor fell on him when he was lifting it out of a van (Tr. 191). The claimant indicated he received some relief from the pain with medication, but the severity increased as the medication wore off. At least daily the claimant's back pain radiated into his right leg, and he also suffered from numbness in his right foot three to four times per day. The claimant attributed the numbness to maintaining one position, *e. g.*, standing or sitting for too long, but he denied suffering from muscle spasms, cramping, or charley horses. He testified he was taking Lortab and used a duragesic patch every other day for his pain (Tr. 192-93). The claimant's back pain was aggravated further after he was involved in an automobile accident in December 2006. He contemplated back surgery, but the surgeon would not perform it because his blood pressure was too high. At the time of the hearing, the claimant had an upcoming appointment scheduled regarding surgery (Tr. 194). The claimant testified that his blood pressure remained high even though he was taking three kinds of medication for it (Tr. 195-96). According to the claimant, he could sit in a chair for

fifteen minutes before needing to stand for twenty or twenty-five minutes, stand in one area for ten to fifteen minutes before needing to sit or lie down, walk half a block, and lift approximately ten pounds (Tr. 196-97). He could drive but had problems sitting for long distances, could not "bend over very far," and could squat if he could hold onto something (Tr. 197). The claimant took sleeping pills and could sleep uninterrupted for about three hours. The Lortab and duragesic patch made him sick (Tr. 198). He spent from 85 to 90 percent of the day lying down or in the recliner. His ex-wife performed all the household chores, in addition to helping the claimant get dressed and take a bath (Tr. 199). The claimant also testified that he was incarcerated "for kidnapping [*sic*], escape . . . a grand larceny or a forgery or something" over a four year period (Tr. 200-01, 203).

The ALJ summarized the claimant's testimony and found it was not completely credible. Some of the reasons he relied upon included that: (i) the claimant's complaints were not supported by the medical records, *i. e.*, the treatment records made no mention of side effects of medication, foot and toe numbness, and the limited ability to walk, stand, sit, or lift; and, (ii) "[t]he claimant's spinal disorder has been treated relatively conservatively with medication[,]" *i. e.*, he had not participated in physical therapy or undergone surgery (Tr. 18).[2] The ALJ concluded "that the claimant's medically determinable impairments could

---

[2] The ALJ relied on factors other than those mentioned above in finding the claimant was not credible, *e. g.*, the claimant's subjective complaints were not supported by the opinions of the non-examining consulting physicians, and the claimant's past criminal history "reflect[ed] poorly on the claimant's credibility." (Tr. 18-19). Although some of these reasons may be supported by the record, *see, e. g., Sanders v. Astrue*, 2008 WL 5427681, *slip op.* at *8 (D. Kan. Dec. 29, 2008)

reasonably be expected to produce the alleged symptoms, but that the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 18).

Deference is generally given to an ALJ's credibility determination unless there is some indication that the ALJ misread the medical evidence taken as a whole. *Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. "[B]oilerplate language fails to inform [a court] in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that [a] claimant's complaints were not credible." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). The ALJ's credibility determination clearly fell below these standards.

---

(noting claimant's prior incarcerations were appropriate to consider in credibility analysis), a credibility determination is based on a weighing of all the factors "in combination." *See Huston v. Bowen*, 838 F.2d 1125, 1132-33 n.7 (10th Cir. 1988) ("When weighed in combination, such factors can shed light on the determination of credibility."). As discussed herein, not all of the factors relied upon by the ALJ are supported by the record, so the Court will not weigh the remaining factors. *See Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997) ("[W]hen several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.") [unpublished opinion].

First, the ALJ listed several of the credibility factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) and Social Security Ruling 96-7p, 1996 WL 374186, *3 (Tr. 17-18). The ALJ was not required to perform "a formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but he "may not simply 'recite the factors that are described in the regulations.'" *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4. Here, the ALJ cited the factors followed by a summary of the claimant's testimony; however, he did not link the factors to the specific evidence. *See Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible."). *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence[.]").

Second, and more importantly, some of the reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not supported by the record. For example, although the lack of objective support for subjective complaints is a factor to consider in a credibility analysis, *see Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (noting that one factor to consider when evaluating the credibility of pain testimony is "the consistency or compatibility of nonmedical testimony with objective medical evidence[.]") [quotation omitted], the lack of objective support cannot be the only reason for finding the claimant not credible. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e

will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."). The ALJ's discussion of the claimant's credibility was focused primarily on the lack of objective evidence supporting his subjective complaints, *e. g.*, "the medical records do not substantiate claims of side effects from medication[,] [r]ecords do not substantiate complaints of foot and toe numbness[,] . . . treatment records do not substantiate the allegations of limited abilities to walk, stand, sit, or lift as described by the claimant." (Tr. 18). Further, the ALJ's conclusion that the claimant had received only conservative treatment, *i. e.*, no physical therapy or surgery, was a mischaracterization of the claimant's testimony. The ALJ totally disregarded that the claimant was set to undergo surgery but could not because of his high blood pressure or that at the time of the hearing, the claimant had another appointment scheduled to discuss having surgery (Tr. 194). *See, e. g., Wade v. Astrue*, 268 Fed. Appx. 704, 706 (10th Cir. 2008) (noting that "[i]n light of the ALJ's mischaracterization of Mr. Wade's testimony, we direct the ALJ on remand to reevaluate the credibility of his subjective complaints of pain.") [unpublished opinion].

For the reasons set forth above, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should properly analyze the claimant's credibility, and if such analysis requires any

adjustment to the claimant's RFC, the ALJ should redetermine what work, if any, the claimant can perform and whether he is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 5th day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**